Paul, the case of Al Shimari v. CACI, Mr. Mayor Osmey. Did I get that right? Yes, Your Honor. Okay, good. Good morning, and may it please the Court, Baher Osmey from the Center for Constitutional Rights, on behalf of the four plaintiff appellants in this case, and with the Court's indulgence, I would just like to say this is in loving memory of heroic human rights lawyer, Michael Ratner, who passed yesterday. Your Honors, the undisputed evidence in this case demonstrates that in the command vacuum that indisputably existed in Abu Ghraib, CACI interrogators took control and ordered abuse of detainees through military police, which resulted in a conspiracy that caused plaintiff's harm, as well as numerous other civil attorneys in Abu Ghraib. And in bringing this case, plaintiffs in no way seek to question military judgments. To the contrary, they seek to enforce military law and policy and co-terminus statutory and use Kogan's international law norms that prohibit torture and abuse and the kind of unlawful conduct engaged in by CACI. Even if there was not a vacuum, your argument would be the same, wouldn't it? That's right, Your Honor. That goes to the sort of Taylor prong one, and there are two features of our argument in Taylor prong one. What was the level of control under formal interrogations and also what this court asked the district court to look at, but the district court did not. What was the level of control outside of formal interrogations on the night shift? But I think to a more fundamental point. The status of discovery is a little bit unclear to me. Has there been any additional discovery on the jurisdictional facts we're concerned with here since the last time? There was nominal discovery, Your Honor, but we had by agreement previously stipulated that the record in a related case, the Salovey-Titan proceedings, would be evaluated by the district court under the kind of factual analysis this court asked it to do, and that is what constitutes the majority of the record here in this case. Mr. Asmey, what evidence is there in the record concerning control over the nighttime interrogations? Yes. The evidence, which is undisputed, has a number of parts. First, there was a command vacuum, and we cite to conclusive evidence in pages 17 to 18 of our brief from military investigative reports, which is largely ignored by the district court, that there was an absence of a command presence, particularly at night, and that absence was clear. There was an absence of oversight over contractor operations. They failed to provide oversight. Colonel Brady himself testified that the biggest mistake was not having a formal system to control Kaki. Tor Nelson testified that he never had the military supervise the interrogation. So that's the command vacuum. There's additional testimony that in that vacuum, Kaki assumed control. Megan Greiner and Amber will testify that it was clear to them that the MI was in control, and that included Kaki. Greiner and Frederick, two co-conspirators who served time in a military brig for this conduct, testified that they each received orders from Kaki interrogators, including specific instructions to soften detainees, and they believed their role was to serve at military intelligence like Kaki and soften up detainees for interrogations. Military analyst Hernandez testified that contractors had free reign. We knew we couldn't touch them. And then there's very powerful evidence from Frederick and Greiner that Big Steve and DJ, these are Kaki employees, ordered, specifically instructed them to soften up detainees by using stress positions, sexual humiliation, forced nudity, sleep deprivation, diet manipulation. Big Steve in particular, Frederick said, loved using dogs. He called it the doggie dance, using unmuzzled dogs on detainees, and ordered him to, forgive me, treat detainees like shit, intimidate them. And after November 1st especially, he wanted more. Frederick, regarding DJ, has very damning testimony. He requested that DJ suffocate detainees by covering their mouth and nose, that he ordered DJ to make detainee named Dawoud do a low crawl in the mud. And even though DJ says he didn't want to, he knew he had to listen to DJ, and perhaps most significantly, DJ testifies that, sorry, Frederick testified that DJ ordered him to put pressure points repeatedly on detainees. And when he's asked, was that intended to inflict pain? Yes. Including severe pain? Yes. So we have testimony that there is an agreement, a conspiracy to commit conduct that literally meets the statutory definition of torture, intentional affliction of severe pain. Now, if I could also take a step back and talk about another, that's the sort of factual presentation, talk about what seems to me another critical component of Taylor and its preceding and succeeding cases, which is that as a matter of law, a claim can only be a political question when we're dealing with contractors if it challenges the lawful discretionary decision of the military. That is the only kind of, quote, sensitive military judgment that Taylor says is constitutionally committed to the political branches. And Taylor and its progeny have never been extended to intentional torts, let alone torts that raise statutory violations that Congress has enacted and required the political branches to abide by. And we know that because Taylor and all the preceding and succeeding cases are negligence cases, and they all make clear that the only kind of decision that requires judicial extension is a lawful discretionary one because those are the ones subject to only military criteria. There's no legal criteria available. And I believe Taylor's approving citation of Lane v. Halliburton suggests the recognition that And therefore, we can review Kaki's conduct without questioning any sensitive military judgments of the kind the court understands. And that aligns perfectly with Baker, because it's only with negligence claims that you're questioning the reasonableness of a discretionary military judgment in the exclusive realm of military expertise and discretion. So think about Carmichael. How could the court analyze the reasonableness of a military decision to route a fuel convoy through enemy territory? Or in Taylor, how could the court assess the reasonableness of the military's decision about how to wire or create a generator around a tank ramp? Or Harris, how could the military question the reasonableness of a military decision to locate a barracks in enemy territory? And that's also Lee Hsu. Judge Wilkinson's decision and Lee Hsu and Tiffany really draw this out clearly. Lee Hsu involved a U.S. attack on a suspected pirate ship, and the plaintiff there, as Judge Wilkinson details, questioned dozens of small-bore tactical decisions. The court has no way to evaluate how you attack a pirate ship in the Horn of Africa. Same with Tiffany, subject to an important caveat. That involved a split-second decision to target a plane the United States thought was an enemy plane, and it was a negligence claim, and Judge Wilkinson stresses the case would have been different if it involved a violation of federal statute or regulations. And that's our case. We don't question the reasonableness of any discretionary military decision. We ask this court to compare Kaki's conduct as against well-established statutory norms embodied in the Torture Act, the War Crimes Act, and Yuskogin's international law norms that courts have applied for decades and see if the conduct meets that standard. And this is exactly what the Supreme Court said in Zivotofsky, this kind of facts-to-law application. That's what the court called a familiar judicial exercise. And I don't think Kaki has an answer to that or Japan Whaling's statement, the Supreme Court's statement, that applications of statutory, sort of clearly unlawful norms to conduct. That's never a political question. Judge Kavanaugh in El Shifa in his concurrence says the Supreme Court has never found a political question in the application of statutory norms, quote, never, period, unquote. And that's, you know, even more, Your Honor, that suggests not a reason for judicial abstention. It suggests the constitutional obligation of the court to apply the judgments of the political branches, which includes Congress in enacting these prohibitions, and includes the military, including military investigative reporters, including Donald Rumsfeld, who condemned this behavior, and President Bush, to the facts of this case. There's a way in which this is a simple application of the Supreme Court's decision in Marbury v. Madison to say what the law is and what the law prohibits. So I've talked a little bit about the question of, on Taylor Prong one, the absence of control outside of formal interrogations. And I would say that the district court's factual analysis here I do think rises to clear error because it failed to, as this court knows, undertake the inquiry this court wanted, to ask that question out of the concern this court had, concern that our allegations stem from abuses on the night shift. Why, Mr. Esme, I'm wondering about the discovery in this case. When we sent the case back, the district court did reopen the record, and yet there was no additional discovery. Could you enlighten us on that? Your Honor, we believed that we had enough evidence in the record from the proceedings in the Saleh v. Titan case to demonstrate the absence of plenary control, both as a formal matter and an informal matter. And so what we did do was marshal that evidence to address the kinds of questions this court asked the district court to address. And it made its findings based on a significant factual record, albeit one with which we disagree with the district court's interpretation. Okay. And so that's on the question of what happened on the night shift. I would also maybe take a moment to even address the question of formal control, which we believe the district court clearly erred because it failed to actually consider our substantial evidence on the record. He looked at the contract, but failed to look at the ‑‑ sorry, the district court looked at the contract, but failed to look at the statement of work that was appended to the contract, which says that CACI was required to assist, supervise, and monitor all aspect of contractor activities and is responsible for the supervision of all contractor personnel. It also required CACI to find sophisticated interrogators. Well, why? If no ‑‑ because there is discretion in the act of interrogation. And Dan Provosnik, the site lead for CACI, actually agrees that when CACI undertook interrogations, they had to exercise discretion. He concedes that it's not a formulaic exercise, like, for example, driving a fuel convoy where there is no discretion. And this contractual language seems to us nearly verbatim to the contractual language this court considered in Taylor, which said the contractor shall have exclusive supervisory authority and responsibilities over employees. And, Taylor, the court thought that language foreclosed the idea of plenary control. There's also evidence about a dual chain of command. Provosnik, it's clear that CACI had the exclusive obligation and authority to discipline, which is why, even though the military could send 10 co‑conspirators to a military brig for this conduct, they have no authority over CACI. The authority over CACI comes from this court through law. Colonel Pappas and Provosnik and Mudd testified that there are two chains of command, even on operational matters. We relied on the site lead to supervise CACI employees. And this is also critical. CACI, the site lead, had veto power. He could order a detainee not to follow military instructions. And I would say and note that in the D.C. Circuit opinion in Salih v. Titan, D.C. Circuit ratifies the factual finding of the district court that there was, for CACI anyway, as opposed to the translation company, for CACI there was dual oversight, a dual chain of command. So even at the formal level, there was discretion. But a finding outside of the context of interrogation, there was no control, is sufficient for this court to reverse and find no political question. If I could in my remaining 45 seconds address judicially manageable standards briefly, we feel that this is a serious error that requires the court's attention. First, we don't believe that ambiguity can permit the kind of judicial abdication of its responsibility to interpret legal questions. If it were true, equal protection and due process jurisprudence would not exist in this country, and asylum law would be eviscerated. With respect to torture, the Supreme Court and the district court have already concluded that this is a, quote, specific, obligatory, and universal norm. Congress has codified the provision in the War Crimes Act, the torture statute, and the TVPA, and the district court's analysis would make the TVPA and the War Crimes Act non-justiciable. Quickly, with respect to war crimes, status, civilian or military, is irrelevant for the war crime of torture and CIDT. The court relied on Blackwater, but that's a targeting decision. Of course, civilian or combatant status is relevant to when you kill somebody. It is irrelevant when individuals are ordered or as a combat in the custody of a detaining authority and subject to their control and obligation of humanity. Mr. O'Connor. May it please the court. This is our fourth trip to Richmond in this case. The first three involved what I would think of as novel, difficult questions of law. Dealt with combatant activities preemption. Dealt with some difficult issues of appellate jurisdiction. Dealt with, I believe this court was the first appellate court to construe the Supreme Court's decision in Keoghle. We don't believe this appeal involves any difficult questions of law, and the main reason for that is the court's last opinion in this case laid out in great detail exactly what the law is as it pertains to political question. Judge Keenan's opinion for the court made clear that the Taylor test applies and explained exactly how the Taylor test applied to the allegations in this case. So the real question is, did Judge Lee follow this court's remand instructions and apply the correct test, and were his factual findings clearly erroneous, and at least for the second Taylor test, was his judgment correct as a matter of law that the second Taylor test was implicated here? I do want to touch briefly on a question Judge Thacker asked about the status of discovery. This case isn't at its beginning in terms of discovery. This case is at its end. This case, unlike a lot of the cases that the political question cases that have been decided by this court and others, went all the way through merits discovery. Merits discovery closed in 2013. We, CACI, had a couple of motions to compel that were pending at the time in 2013 that were mooted by the court's dismissal of the case back then and did not need to be reasserted for the jurisdictional discovery because they didn't bear on subject matter jurisdiction. But full merits discovery ended in 2013. And then after this court ruled, Judge Lee reopened discovery to allow plaintiffs to take any discovery they wanted. Judge Lee started out by allowing 120 days, and both parties went in and said, we don't think we need that much time. But we made clear, and it's in the court's order, that if the plaintiffs got to the end of the jurisdictional discovery period and thought they needed more time, that we were amenable to extending that period so they could take whatever discovery they wanted. And to me, the most important fact regarding discovery in this case is, this is the first tort case I've ever seen where the plaintiffs are completely uninterested in who they interacted with and who caused their injuries. During merits discovery, we sought discovery of who interrogated these plaintiffs, if anyone. And the government refused to provide that information on the grounds that it was classified, and we moved to compel. And we fully expected that we'd have plaintiffs standing shoulder to shoulder with us and saying, yeah, we want to know exactly, because we want to get to the bottom of exactly what happened to these plaintiffs. But they didn't. What plaintiffs did is they filed a paper that said, we don't take a position on whether the United States should have to divulge who interrogated these plaintiffs. But we are going to tell you, Judge, that that information isn't really necessary to try this case. Mr. O'Connor? Yes, ma'am. Could I ask you just to nail down a couple points that I'm a little unclear on from your brief? First of all, with regard to the conduct as alleged regarding each plaintiff, do you agree that at least some of the conduct is unlawful, as alleged? Conduct as alleged by the plaintiffs? I think that some of the conduct as alleged by the plaintiffs in their complaint would be unlawful. As to each plaintiff. I think that's probably true, Your Honor, but certainly for at least some of the plaintiffs they alleged. Okay. Well, then what I'm struggling with here, and maybe you can help me, is if some of the conduct alleged is unlawful as to these plaintiffs, then how was it within the discretion of the military to authorize unlawful conduct, as opposed to conduct that was gray area? Well, Your Honor, when I say some of the conduct was, well, let me back up. Some of the conduct is perhaps viewed as unlawful with the benefit of hindsight. Okay, but what about sexual assault? I mean, there were allegations. Just one sec. Allegations of sexual assault, being chained to the bars of the cell, extended use of ‑‑ well, let's just leave it at sexual assault and being chained to the bars of the cell. I guess being threatened with unleashed dogs. I can understand how electric taser shocks, beatings. Now, certainly, perhaps with regard to sleep deprivation or sensory deprivation, you'd have some gray areas. But with regard to beatings and sexual assault, how are these gray areas? Under no case scenario that I can think of would these not be unlawful. And, therefore, not discretionary, subject to the discretionary judgment of the military. The military couldn't exercise its discretion, could it, to authorize beatings and sexual assaults? Absolutely not, Your Honor. Okay. But I think this court should take the case as it is. And as the case is, there is zero evidence tying my client to those things. Zero. And zero evidence tying my clients to any mistreatment of these plaintiffs. Right. But that would be a summary judgment argument, would it not? In other words, the evidence just isn't there. That's not really a political question argument, it seems to me. But the political question argument has to be, would the military be exercising its discretion or judgment as to the acts alleged? And if so, then we're required to back off. Well, Your Honor. The courts have no business in that. It certainly, those issues would be summary judgment issues. And those issues, if this case were remanded, would be brought up on summary judgment. This case, when the court remanded last time, instructed the district court to consider political question only and not to, the summary judgment deadline had not passed by the time the court originally dismissed the case. However, while those would be summary judgment issues, I think in assessing the political question, this court has to consider, and I think its case law expressly says that the court should consider, how the case will be tried by the plaintiff and how it will be defended by the defendant. And with discovery having completely closed in this case, there is zero evidence that any of CACI's interrogators were assigned to any of these plaintiffs. And that's really important because the other discovery in this case is we took the depositions of some of the MPs who were court-martialed. Some of the MPs who were involved in the disgusting behavior that we've seen in photographs and we've seen in reports and things like that. And what they said is they said interrogators, whether it's CACI interrogators or military interrogators, they would sometimes give instructions on treatment of detainees. But those were all- Okay, but Mr. O'Connor, I think you're arguing failure of proof again. We're here on the jurisdictional issue of political question. Failure of proof is not a jurisdictional argument. It's an insufficiency of the evidence argument. So I think we need to try to narrow ourselves to the political question evidence and argument, if you would. We'll do, Your Honor. And as to the first Taylor test, Judge Lee's findings of plenary and direct control are not only not clearly erroneous, that's the only conclusion that could be reached on this record. Judge Lee properly relied on the declaration testimony from Colonel Pappas. And here's what Colonel Pappas had to say about plenary and direct control. Quote, in all respects, CACI interrogators were subject to the operational control of the U.S. military. CACI PT interrogators were subject to the same standards of conduct as military members. He went on to say the military decided where each detainee would be incarcerated, which detainees would be interrogated, who would conduct the interrogations of a given detainee. Both military and CACI interrogators were required to prepare interrogation plans, and those had to be approved by U.S. military personnel. At the conclusion of interrogation, military and civilian interrogators had to prepare an interrogation report, and that had to be entered into a classified military database. He also testified all of the interrogators, military and civilian, were treated as part of one team and as having the same interrogation responsibilities, reporting obligations, and mission direction. In his testimony at the Smith Court-Marshall, Colonel Pappas, again, when asked about the chain of command for a CACI interrogator, explained that it would be exactly the same as for a sergeant interrogator who was a military interrogator. No difference at all. Was there a distinction, Mr. O'Connor, made in these depositions between the nighttime interrogations and the daytime? Well, in Colonel Pappas' declaration, he stated at all times. He did not specify daytime, nighttime, but he said at all times. And I think it's also important that the MPs testified that there were no instructions from CACI interrogators that were other than to their own assigned detainees. Major Holmes, she was the officer in charge of the interrogation operation at Agua Gray Prison, right there on the ground, and she testified very similarly to Colonel Pappas. She was deposed. It was not by declaration. She was deposed. She testified that all the interrogators, they were plugged into a Tiger team and that those interrogators then reported to a military section head, who then reported to Major Holmes, and then she reported to Colonel Pappas. And that military leadership controlled what was permitted in terms of what techniques could be used, what conditions of detention could be used. They had to be approved by military personnel. And I think this Court's decision in Taylor and this Court's decision in the last Elshamari opinion made clear that where the military is exercising plenary and direct control, that presents a political question because, in essence, those actions are attributable to the military. They're the ones who are controlling all the activity. Well, can the military approve unlawful conduct? Not lawfully, Your Honor. I know that's sort of a roundabout answer, but they can't lawfully approve it. But the fact is that they did. And, in fact, many of the things that plaintiffs complain about as general conditions that were in use at Agua Gray, those were in effect long before any CACI personnel showed up. Right. And that's why I'm trying to exclude a lot of that and just focus on the beatings, the sexual assault, and the things that are indisputably, it seems to me, unlawful. But, Your Honor, the handcuffing was done, the nudity, the use of women's underwear, use of stress positions. Private Frederick, one of the MPs who was court-martialed, testified that all of those things were in effect before the first CACI. So you're saying that the unleashing of the dogs and the oxygen deprivation, those tactics were approved by the military as a matter of fact in this case? Well, as a matter of fact, let me start with the depriving of oxygen because I think the way Mr. Osme explain that is misleading. That allegation doesn't relate to a detainee. That allegation relates to an Iraqi police officer who was suspected of smuggling a gun into a detainee who then used that gun to shoot an Army sergeant in the chest. And when that happened, the military leadership, Colonel Steve Jordan, who was the executive officer for the military intelligence brigade, he went and got whatever interrogators he could find because there was a very exigent circumstance there, and they weren't trying to get military intelligence at that point. It was, are there any other guns in this prison? Okay. And I guess, and I don't mean to keep belaboring or interrupting, but I guess what this is boiling down to me is if some of the conduct was undisputably or indisputably unlawful, okay, how can that present a political question? If the military did not have authority to authorize illegal acts, these acts of assault and sexual assault, how then are we required to say there is a political question? It doesn't follow to me. I understand the gray areas, you know, the things that were authorized in September and then withdrawn in October or whatever the dates of those different memos were, but I'm just not sure as to what everybody agrees is unlawful. How does that come under the umbrella of a political question? Your Honor, I read this court's opinion in Taylor and this court's opinion in the last Elshamari appeal as, at least for the first Taylor test, as providing a very linear black and white test. So under your theory, then, the contractor gets more protection than the members of the military. Granner and Frederick were prosecuted and incarcerated for acts, but yet, khaki, the contractor is shielded under the political question doctrine. Is there a disconnect there? And if not, why not? No, Your Honor, I don't think there's a disconnect there. And the reason is that there is no reason, if the evidence supported it, that the United States could not have prosecuted CACI personnel. They certainly could have the Anti-Torture Act. If there was an act of torture and the United States had credible evidence that a CACI interrogator had engaged in that, they could have been prosecuted under the Anti-Torture Act. Every CACI interrogator is a U.S. citizen, which means that they are covered by the Anti-Torture Act. Likely, they could have been prosecuted under the Military Extraterritorial Jurisdiction Act. And this court held in Pesaro that a cave in Afghanistan could be within the special maritime and territorial jurisdiction of the United States, which would bring the entire U.S. criminal code into play, and arguably that argument could have been made by the United States here if there was credible evidence. And that was actually a point that Judge Silverman made in Soleil, where he said, it's telling to us that in one of the most investigated events in the past few decades of American history, the United States did not see fit to prosecute a single CACI employee for actions at Abu Ghraib Prison. Well, they did court-martial soldiers because they had very credible evidence of their direct involvement. And I guess I should also add that this is not a question of do plaintiffs get to go forward in a court or get nothing. The United States has been very clear from the beginning that if they were presented with an administrative claim of credible misconduct and mistreatment by a detainee, then they would pay on that claim. And, in fact, Soleil, the named plaintiff in the D.C. circuit, he had submitted the claim, and they found out he wasn't even interrogated. It was just a false claim, but they offered him $5,000 just to, you know, because he'd been detained for too long in their opinion. So the question is, is this part of the judicial function to litigate battlefield conduct in a place where there were regular rocket attacks, regular mortar attacks, sniper fire, soldiers were killed by incoming fire? Or is this a situation where, as in with Mr. Soleil, the proper avenue is for an administrative claim where the United States, which has far superior access to the evidence, including, for instance, whether these plaintiffs were interrogated, and if so, by whom, whether they ought to be the ones that are deciding whether there's merit to this claim and whether an offer in settlement ought to be made administratively? So you're saying that, in essence, the Article III courts of this nation cannot review a situation where there's clearly torture because it's a violation of international treaties, the Torture Act, this and that. And so the courts have no business in terminating that? No, Your Honor, that's not what I'm saying. What I'm saying is that the Article III court, if there were a credible factual basis for torture, can prosecute. The United States can prosecute an Article III court for torture under the Anti-Torture Act. The different question is whether a civil action ought to lie where the sovereign is not a party, where the sovereign has access to classified information that the parties do not have access to and one of the parties does not want particularly access to, and where there is no prosecutorial discretion in a civil situation such as that there is in a criminal situation. The court has criminal jurisdiction to prosecute crimes whenever they occur within the reach of a statute and within the jurisdiction of this court. Why wouldn't we have civil jurisdiction over claims involving criminal violations brought under a permissible court statute? Your Honor, I see my time's up. May I answer? The reason is I think I would go back to what the Supreme Court said in Sosa dealing with the Alien Tort Statute, that there's a difference between prosecution with all the protections of prosecutorial discretion and civil actions which do not have prosecutorial discretion and implicate evidence that the United States itself has in its possession and is not in the possession of the parties. Thank you, sir. Thank you, Your Honor. Mr. Adler? Your Honor, let me try and address some of what Mr. O'Connor raised. First, by starting with his observation that this appeal doesn't present a novel issue, there is a way in which, of course, it does, because CACI seeks to apply Taylor and the political question doctrine for the first time as against intentional torts and clear statutory violations. And there is no limitation, as your question brought up, Judge Floyd, to CACI's position, because under their view the political question doctrine would render criminal prosecutions under the War Crimes Act and the Torture Statute non-justiciable. There is no civil criminal distinction with respect to subject matter jurisdiction. Mr. O'Connor's emphasis on the absence of connection to plaintiffs. First, as Judge Keenan drew out, that has nothing to do with the political question doctrine that goes to the merits and its summary judgment. CACI concedes that much in footnote five of their brief. When they say the reason they didn't pursue a motion to compel in the district court is that they were only concerned at that point about questions of justiciability, it doesn't go to questions of justiciability. Second, CACI has also conceded that because this is a conspiracy case, we do not need to show that they individually beat our clients, even though there is some evidence in the record that this is what CACI said in the district court docket 222 at 11, citing Fourth Circuit law, quote, a fundamental feature of conspiracy claims is that a party to a conspiracy can be held liable for the actions of co-conspirators and furtherance of the conspiracy, even if the defendant had no involvement with the actions that injured the plaintiff. We will look forward to establishing that that proposition is collaterally estopped, and, of course, that is the law anyway. And we do have ample evidence that this conspiracy caused the kinds of clearly prescribed behavior, chaining, beatings, sexual assaults that our plaintiffs themselves suffered, and a reasonable jury could conclude that is a reasonably foreseeable consequence of the verbal agreement to commit torture and abuse. And I note he did not talk about the evidence that I surfaced from Frederick and Grainer about pressure points being designed to inflict severe pain. Regarding Pappas and Holmes, there's a way in which CACI is arguing, who are you going to believe, me or your lying eyes? That goes to a very kind of generic aspirational view of what should have happened, but you know what did happen, and as a court of law, we're obligated to address those harms when they transgress fundamental international law prohibitions. Holmes' testimony is disputed. She also testifies she relied heavily on the CACI site lead. She only occasionally monitored interrogations and didn't recall monitoring CACI. She gave a statement to military investigators that CACI supervised MPs, which is consistent with the overwhelming evidence that we put forward in the record that is not disputed, and no one reported abuse to her. And Brady says the same thing. I never heard of any abuse by CACI, but we know there was abuse, and that evidence is a fissure in the chain of command. Mr. Asney, I haven't heard you, and excuse me for interrupting, but I haven't heard you respond yet to Mr. O'Connor's point that Judge Lee's findings of fact in relying on these about the findings that he made. Two things. Where are these underlying factual findings incorrect? On the question of formal control, we believe they are insofar as they ignored substantial evidence that we put forward, like the statement of work, contradictory statements from Pappas and Brady, which were not developed. So you're saying they're incomplete, but my question, as I understand it, they're incomplete, but my question is what is inaccurate? What is wrong about them other than the fact that they, from your position, don't address the entire series of interrogations that occurred? Speaking just on the question of formal control, because we also believe the And where's the clear error? Where's the clear error? So the clear error is on informal control, not answering this Court's question about outside of interrogations, and the clear error on formal control is not considering contradictory evidence regarding Pappas and Brady, and that's actually why there's a way in which, because those things were inextricably intertwined, you should have deferred those questions to the merits, not considering the level How could you defer it to the merits when the political question doctrine is designed specifically that if it applies, it's supposed to shield the protected party from having to go to trial? And if you have, isn't it sort of like a qualified immunity analysis? I mean, you lose the benefit if you force the party to trial without deciding the legal issue. You might, Your Honor, accept plaintiffs, and this is what the Court makes clear in Kearns, and this Court's citation to Byrne, Pitts, citation to Kearns, plaintiffs have a right to have merits-related facts adjudicated by the trier of facts, and when the facts regarding jurisdiction and merits are so inextricably intertwined, as they are here, because the level of control goes to both the merits of our conspiracy claim and the question of control, we are protected from an indirect attack on the merits. But, of course, just really to emphasize, this case can be resolved based on the violations of statutory norms that are not, as Your Honor pointed out, subject to military discretion, and with respect to Taylor Prong One, all of the conduct outside of formal interrogation. And even though the United States did not choose to prosecute Kaki, they did file an amicus brief in this Court that the case could go forward, given the federal important interest in stopping torture. And then, of course, there's the district court decision, the District of Washington, Selene v. Mitchell, which recently came down, that said even though there's no prosecution of the psychologist who implemented the CIA torture program, there would be no political question. The courts have an obligation to adjudicate questions like that and the questions that persist in this case. Thank you, Mr. Asia. We'll come down and brief counsel over our last case.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker